# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WINKELMAN, *et al.*, | ) | CASE NO. 1: 08 CV 2135 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| PARMA CITY SCHOOL | ) | MEMORANDUM OPINION |
| DISTRICT, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Plaintiffs' Application for attorneys' fees and related costs by a prevailing plaintiff parent pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1451(i)(3)(C). (ECF #11).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Jeffrey and Sandee Winkelman and their son J.W. live in the City of Parma. J.W. has been diagnosed with moderate to severe autism and is entitled to the benefits and services set forth pursuant to IDEA. Among the services and benefits provided by the IDEA is the requirement that J.W. receive an Individualized Education Plan ("IEP"), which is developed by the parents, educators and representatives of the school district to provide a proper educational plan for the disabled student. Plaintiffs disputed the IEP developed for J.W. for the 2007-2008

school year and unilaterally enrolled their son at the Monarch School, a private institution in

Shaker Heights for that school year.

On August 13, 2007, Plaintiffs initiated a due process proceeding seeking among other

things, reimbursement for J.W.'s tuition for the 2007-2008 school year at Monarch School.

Plaintiffs hired attorney Andrew Cuddy to represent them on the case one month later, on

September 10, 2007.[1]

The Independent Hearing Officer ("IHO") Ronald Alexander identified six issues for the

hearing and the attorneys and Mr. Alexander estimated that the hearing would take about 10

days. The actual hearing took 11 days, consisting of 28 witnesses and the introduction of 125

exhibits into evidence. Thereafter, the IHO issued a Decision and Order finding that J.W.'s

2007-2008 IEP was inappropriate because it failed to provide transition services for J.W.

between his private school placement and his return to Parma public school. Mr. Alexander

---

[1]Plaintiffs attempted to find competent local counsel to assist them with J.W.'s
educational issues in 2003 and were unsuccessful. Mrs. Winkelman contacted all three private
attorneys practicing special education law in her local area. Either the attorneys refused to take
the case because Plaintiffs could not pay their rates or they were too busy to take on the
Plaintiffs' case. Legal Aid informed Plaintiffs that it had no attorneys qualified in the area of
special education law and the Cleveland State and Case Western Reserve University law clinics
did not handle special education matters. The Ohio Legal Rights Agency lacked funds to handle
due process hearings. Accordingly, the Winkelmans proceeded *pro se* until the Sixth Circuit
determined that they could not proceed *pro se*. In September 2005, Mrs. Winkelman contacted at
least 20 attorneys in the greater Cleveland area that might have some ability to handle a special
education matter, as well as the Cleveland Bar Association. Despite her efforts she could not
locate an attorney to represent them. For a time a criminal attorney, Michael Goldberg,
represented them *pro bono*, but he lacked experience in special education law and was
unsuccessful in pursuing the Plaintiffs' claims. Eventually, the Supreme Court held that
Plaintiffs had the right to represent themselves in reimbursement matters under the IDEA,
however, as Plaintiffs' experience with Mr. Goldberg highlighted, it would be preferable to have
competent legal counsel who specialized in special education law. Mr. Cuddy offered to
represent the Plaintiffs' on a contingency fee basis after hearing their case on oral argument at the
Supreme Court. He was officially hired by the Plaintiffs on September 10, 2007.

concluded that J.W. did not receive a free, appropriate public education ("FAPE") and required

Parma to reimburse Plaintiffs for Monarch School tuition for the 2007-2008 school year in the

amount of $68,500.  On August 21, 2008, a state level review officer ("SLRO") affirmed the

IHO's decision.  The SLRO decision and order was not appealed and the statute of limitations on

such an appeal has expired.  Accordingly, the SLRO decision and order is now a final order.

Plaintiffs filed this action to seek attorneys fees under IDEA for the period of April

30, 2007 through March 18, 2009 in the amount of $274,361.02.  Mr. Cuddy's time is billed at

$375 per hour as is that of his co-counsel Jason H. Sterne.  Their paralegal is billed at $125 per

hour.  Defendant objects to the amount of attorneys fees and costs and asks that the fees be

reduced to $67,325 which includes eliminating all billing for Mr. Sterne, reducing Mr. Cuddy's

hourly rate to less than $225, eliminating some of the hours billed as erroneous or duplicative,

eliminating travel costs and reducing the fee award by 40% because Plaintiffs allegedly

prolonged the due process hearing, and further reducing the fee award on equitable grounds

because Plaintiffs allegedly obstructed the development of the 2007-2008 IEP.

## DISCUSSION

The IDEA provides that "[i]n any action or proceeding brought under this section, the

court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of

a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). A "prevailing

party" for IDEA purposes is one who "succeed[s] on any significant issue in the litigation which

achieves some of the benefit the part[y] sought in bringing suit. *Deal v. Hamilton County*

*Department of Education*, 2006 WL 2854463 at *6 (E.D. Tenn. 2006), quoting in part, *Berger v.*

*Medina City Sch. Dist.* 348 F.3d 513, 526 (6th Cir. 2003) quoting *Hensley v. Eckerhart*, 461 U.S.

3

424, 432 (1983).  The Winkelmans are clearly prevailing parties under this standard as they received the biggest part of the relief they sought, namely reimbursement of the tuition for the 2007-2008 school year at Monarch.

The fees awarded under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C).  The court may also, in its discretion, reduce the amount of attorneys' fees if it determines that the parent unreasonably protracted the final resolution of the controversy; the amount of attorneys' fees unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience; or the time spent and legal services furnished were excessive.  20 U.S.C. § 1415(i)(3)(F).

Courts have noted that a useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  See *Deal*, 2006 WL 2854463 at *6.  Moving first to the issue of what is a reasonable hourly rate, the "burden is on the fee applicant to produce satisfactory evidence, in addition to the attorney's own affidavit, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984).

Mr. Cuddy has submitted his own affidavit listing his qualifications and experience in special education law.  He is a 1996 graduate from law school with extensive practice experience in representing parents in both courts and administrative bodies in special education matters.  He

4

has been a speaker at numerous conferences and CLE events on special education law and has authored a book entitled "The Special Education Battlefield: A Guide to the Due Process Hearing and Other Tools of Effective Advocacy."    Mr. Cuddy's law office is in Auburn, New York and he states that he is presently focusing his efforts on the downstate New York legal market, including New York City and surrounding counties.  (Cuddy Aff. ¶33).  Mr. Cuddy states that his retainer rate in New York City and the Southern District of New York is $400 per hour for both himself and his associate Mr. Andrew Sterne.  He seeks an hourly rate of $375 for both himself and Mr. Sterne in this action, having adjusted his rate based upon his review of the market rate prior to taking on this litigation.  *Id.* at ¶37.

Mr. Cuddy also submits the affidavit of Michael Goldberg in support of his contention that $375 is a reasonable market rate in this district for an attorney of his experience and skill.  Mr. Goldberg, who is the Principal at the law firm of Michael J. Goldberg & Associates, was admitted to practice in the Ohio Supreme Court in 1988. Although Mr. Goldberg specializes mainly in criminal law, he represented the Winkelmans in earlier litigation with the Parma Board of Education on a pro bono basis.  Mr. Goldberg states that his hourly rate is $350 and he opines that his hourly rate is reasonable for an attorney of his experience based upon the complexity of the issues presented (presumably in the Winkelman matter). Mr. Goldberg notes that a court in this District found rates of up to $500 per hour reasonable for an attorney with over 15 years of experience in *In re: Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir. 2005).  (The Sixth Circuit affirmed a fee award of $50 million in a multidistrict products liability class action that was settled for $1 billion.)  Neither Mr. Cuddy or Mr. Goldberg provide information on hourly rates of attorneys who represent parents in special education matters in the Cleveland area.

5

Defendants submited copies of affidavits in support of fee applications from four lawyers from two Cleveland law firms that were submitted in IDEA cases within the last 5 years. Nessa Siegal is the founding partner of Siegel & Agins Co., LPA who graduated from law school in 1986 and was admitted to the Ohio bar the same year. She has over 20 years experience in special education law. In her affidavit submitted in 2005 she states that her hourly rate is $250. Defendant states that Ms. Siegel's current hourly rate is $275. Kerry M. Agins is Ms. Siegel's partner, who began working with Ms. Siegel while she was in law school. Ms. Agins received her law degree in 2000 and was admitted to the Ohio bar the same year. She has experience in the areas of special education law, estate planning for families with disabled members, social security eligibility appeals and eligibility determinations for mental retardation/development disabilities services. Her hourly rate as of the 2005 fee application submitted by Defendant was $175. Her current hourly rate according to Defendant is $225.

Defendant also submits the affidavits of Judith Saltzman and Franklin J. Hickman from the Cleveland law firm of Hickman & Lowder Co., L.P.A., a law firm which concentrates its practice exclusively on disability and elder law. Ms. Saltzman graduated from law school in 1974 and practiced law in Massachusetts for 22 years before moving to Cleveland in 1996. Ms. Saltzman states that her practice has centered on disability, health and welfare matters since 1976. She began working at Hickman & Lowder in January 2000, primarily in the area of special education. Her first special education matter was the Knable case in 2001. Her hourly rate on the fee application submitted in October 2007 was $225.

Franklin Hickman graduated from law school in 1973 and has focused his practice almost exclusively on legal issue related to persons with mental retardation, mental illness and

6

physical and educational disabilities.  He has been representing parents in special education

matters since 1975.  In his fee application in the Knable case submitted in October 2007, Mr.

Hickman's hourly rate was $250.  He noted that his hourly rate is higher in other types of cases.

Thus, while the Cleveland market may support hourly rates comparable to the rate

sought by Mr. Cuddy in other types of litigation, the only evidence before the Court regarding the

market rate for lawyers representing parents in special education matters indicates that

experienced, first chair lawyers receive $225 - $250 per hour.  Mr. Goldberg claims that his

hourly rate is $350 however he did not bill for the only special education matter he ever worked

on and thus has never received $350 per hour on a special education matter.

Accordingly, despite Mr. Cuddy's adjustment of his hourly rate for this case, his

request for an hourly rate of $375 exceeds "the rates prevailing in the community in which the

action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. §

1415(i)(3)(C).  At times courts have authorized higher fees for out of town specialists.  When

fees are sought for an out of town specialist, the Sixth Circuit requires that a court "determine:

(1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether

the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree

of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) citing

*Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982).

In this case, Mr. Cuddy has submitted Mrs. Winkelman's affidavit setting forth her

difficulties in finding an attorney in the Cleveland area with any experience in special education

matters.  In 2003 she claims that there were only 3 private attorneys practicing special education

law in her area and that they were unable or unwilling to take on this matter on a contingency fee

7

basis. She again sought representation in 2005 pursuant to the Sixth Circuit's order, calling at least 20 lawyers, clinics, or Bar Associations trying to find an attorney with some experience in special education law who would be willing to take on their case. Again, she was unsuccessful. While Defendant claims there are numerous attorneys in the Cleveland area who practice special education law, they have named only four. Indeed, in her affidavit in support of a fee application attached as Exhibit 5 to Defendant's Brief in Opposition, Attorney Nessa Siegel states that to her knowledge, "there are no more than 5 attorneys in the Cleveland area providing private representation in special education matters, and two of them are Ms. Saltzman and Mr. Hickman. To my knowledge, there are no attorneys in the Columbus area handling special education cases, which are factually and legally complex, and which depend upon extensive expert opinion. These are not the sorts of cases that can be undertaken by attorneys without specialized knowledge and expertise." (ECF #14, Ex.5 at ¶5). The Court finds that the Winkelmans' hiring of Mr. Cuddy was reasonable in these circumstances and indeed, they enjoyed their first success in their ongoing battles with the Parma Board of Education after he was on board.

The question remains whether an hourly fee of $375 is reasonable for Mr. Cuddy given his level of expertise, skill and reputation. Mr. Cuddy is a first chair litigator of special education matters who has more than 10 years of experience. While Mr. Cuddy has reduced his hourly rate from the $400 he charges in the Southern District of New York, as Defendant points out, Mr. Cuddy is not actually a New York City lawyer. His office is in Auburn, NY near the Finger Lakes region of New York. Defendant notes that in two recent special education cases in the Northern District of New York, Mr. Cuddy sought and was awarded fees based upon his hourly rate of $210. The Northern District of Ohio appears more like the Northern District of

8

New York rather than the Southern District of New York in terms of the market rate for special education specialists. Based upon Mr. Cuddy's years of experience and the extensive number of special education matters he has handled as the first chair or lead litigator, the Court finds that a reasonable hourly rate for him in this matter is $275.

Plaintiffs also ask that Mr. Sterne be compensated at the same hourly rate as Mr. Cuddy. Defendant objects to payment for Mr. Sterne at all because he was never admitted to practice in Ohio in either the due process proceeding or in this action. As Plaintiffs' application makes clear, Mr. Sterne never appeared in the due process hearing or in this action. His role was fulfilled in the office in New York and was limited to drafting Plaintiffs' SLRO cross appeal and various motions and responses in this action. While the better course may have been to get Mr. Sterne admitted pro hac vice, such failure does not prevent him from be paid for his work on the file. It is common for law firms to use lawyers to prepare briefs and research issues from the office without being involved in actual appearances on the case. However, as Mr. Sterne was clearly used as a support person, he did not have first chair responsibilities and should not be compensated at the same hourly rate as Mr. Cuddy, no matter his years of experience. Like Mr. Cuddy, Mr. Sterne is a 1996 law school graduate. However, he does not appear to have much, if any, first chair litigation experience and many of the cases he refers to in his affidavit are not special education cases. Accordingly, the Court finds that a reasonable rate for Mr. Sterne's time would be similar to that of a senior associate and sets his hourly rate in this matter at $200.

Plaintiff also seeks reimbursement for 2.2 hours of paralegal time billed at $125 per hour. A request for reasonable paralegal fees may be compensable. *Deal*, 2006 WL 2854463 at *7 citing *Gross ex rel. Gross v. Perrysburg Exempted Village Sch. Dist.*, 306 F.Supp.2d 726,

9

737, 739 (N.D. Ohio 2004); *Knop v. Johnson*, 712 F.Supp. 571, 580, 589-90. (W.D. Mich. 1989). The Court finds that the hourly rate of $125 is reasonable for paralegal time in this District.

Moving on to the issue of the number of hours that were reasonably expended, Mr. Cuddy states that he billed 577.1 hours between April 30, 2007 and August 25, 2008. Included in that period were the administrative proceedings, which included 11 days of hearings, extensive opening and closing briefs, 28 witnesses and the admission of 125 exhibits.

Defendant asks the Court to exclude all hours billed by Mr. Cuddy prior to his retainer by the Winkelmans. Defendant has attached the Retainer Agreement between Mr. Cuddy's law firm and the Winkelman's to its Brief in Opposition. The Agreement was executed by all parties on September 10, 2007. Mr. Cuddy has not responded to that objection and the Court agrees that Mr. Cuddy and his firm should not be entitled to reimbursement for time spent on this matter before they were retained.

Defendant also asserts that Mr. Cuddy's time charts contain some erroneous or duplicative billings on December 14, 2007 and July 20, 2008. Defendant also contends that there are some entries that are unrelated to this matter, specifically, an entry on March 11, 2008 and an entry on August 4, 2008. Mr. Cuddy has not responded to these objections. The Court finds that Mr. Cuddy is not entitled to reimbursement for unrelated matters or for duplicative billings.

Defendant also seeks to eliminate reimbursement for Mr. Cuddy's travel time. This Court has determined that it was reasonable for Plaintiffs to hire out of town specialists in this matter. Accordingly, that counsel should be reimbursed for travel time. However, it seems excessive to permit the billing of travel time at an attorney's full hourly rate. Accordingly, the Court finds that Mr. Cuddy's travel time should be reimbursed at half his hourly rate–$137.50.

10

See *M.L. ex rel. M.P. v. Board of Education of New York*, 2003 WL 1057476 (S.D.N.Y. 2003), n.2, citing *Gonzalez v. Bratton*, 147 F.Supp.2d 180, 213, n.6 (S.D.N.Y. 2001).

Defendant's argument that Plaintiffs prolonged the 11 day due process hearing and therefore Mr. Cuddy's fee award should be reduced by 40% is specious. The IHO and the attorneys on both sides estimated the hearing would take 10 days. Indeed, Defendant introduced about 100 more exhibits than Plaintiffs and there is no indication that Mr. Cuddy spent more time on witnesses than defense counsel. It is clear that both sides knew the hearing would take about 10 days. One more day than the estimate is not unreasonable, even if the extra day could be attributed to Plaintiffs' actions. There is no evidence that Plaintiffs unreasonably prolonged the due process hearing and the time spent on that hearing by Mr. Cuddy was not unreasonable.

Finally, the Court will not exercise its "equitable powers" to reduce Mr. Cuddy's fee award because the Winkelmans' allegedly obstructed the development of the 2007/2008 IEP. That issue should have been raised on appeal of the reimbursement award to the Winkelmans, not as part of the fee application.

With the exceptions noted above, the Court finds the time billed by Mr. Cuddy on the administrative proceedings through August 25, 2008 was reasonable and not excessive.

Mr. Sterne billed 90.4 hours to review the 3300 page transcript of the due process hearing and draft Plaintiffs' cross appeal to the SLRO. The initial brief prepared by Mr. Sterne was 66 pages and the Response brief was 27 pages. The Cuddy law firm's paralegal billed 2.2 hours on the cross appeal. There is no objection to the amount of time spent on the cross appeal, merely an objection to Mr. Sterne's payment because he was not admitted to the Ohio bar or this bar. Accordingly, the Court finds that the time spent by Mr. Sterne and the paralegal on the

11

SLRO appeal was reasonable and not excessive.

Finally, Mr. Cuddy and Mr. Sterne billed a total of 56.4 hours on the fee action. Attorneys may also receive compensation for the time spent preparing and litigating motions for attorneys' fees. *Deal*, 2006 WL 2854463 at *7.

> The ability to recover not only the fee award for a qualified special education attorney's work on the substantive case, but also for the federal claim a parent must file to recover fees from an unwilling defendant, is crucial to enduring that parents and children have access to adequate representation when they seek to enforce the provisions of IDEA.

*Gross ex rel Gross,* 306 F.Supp.2d at 743. Again, Defendant has not objected to the number of hours billed by Mr. Cuddy or Mr. Sterne in the fee action. Accordingly, the Court finds that the time billed by Mr. Cuddy and Mr. Sterne in the fee action is reasonable and not excessive.

## CONCLUSION

For the reasons set forth above, the Court finds that a reasonable hourly rate for Mr. Cuddy's time in this action is $275 and that a reasonable hourly rate for Mr. Sterne is $200. Plaintiffs shall file an affidavit and brief amended fee schedule with the total number of hours billed excluding the time billed prior to September 10, 2007 and any duplicative, erroneous or unrelated entries. Thus, the bill should set out the number of hours billed by each attorney from September 10, 2007 through the administrative proceedings and the number of hours billed by each attorney in the fee action multiplied by the hourly rate assigned by the Court. In addition, Mr. Cuddy should segregate the time he spent traveling as a separate entry and multiply that by half his assigned hourly rate–$137.50. Finally, expenses and costs such as mileage and postage should be itemized and the total amount of attorneys fees and costs should be computed. Plaintiffs' submission is due by June 4, 2009. Defendant may file a response by June 18, 2009.

Thereafter, the Court will enter an Order awarding Plaintiffs their attorneys' fees and costs as modified herein.

IT IS SO ORDERED.

DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: May 22, 2009

13